T.C. Memo. 2000-76

UNITED STATES TAX COURT

SANDRA J. BRANNON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22025-97.                          Filed March 6, 2000.

<u>J. Raymond Karam</u>, for petitioner.

<u>Elizabeth A. Owen</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>: Respondent determined deficiencies of $2,974 and $1,562 in Federal income taxes and penalties under section 6662(a)[1] of $595 and $312, respectively, for petitioner's 1993 and 1994 tax years.

---

[1]     Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether a horse breeding activity conducted by petitioner was an activity not engaged in for profit under section 183(a); (2) alternatively, whether, under section 162(a), some of the expenses in connection with the activity were substantiated; (3) whether petitioner, in an unrelated business activity, established, under section 1012, a basis for an asset used in that activity upon which depreciation would be allowable under section 167(a); and (4) whether petitioner is liable for the penalties under section 6662(a).

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner's legal residence was San Antonio, Texas.

The first issue is with respect to a horse breeding activity that petitioner commenced in 1990 with the purchase of one horse. She purchased another horse in 1991. During 1993 and 1994, the years at issue, petitioner had six horses. The horses were quarter horses. The activity was not successful from a financial standpoint. Petitioner amassed substantial losses over the years, although the losses did not deter petitioner's continuing interest in and dedication to the activity. The Schedule C losses reported by petitioner on her Federal income tax returns were $18,642 and $8,869, respectively, for 1993 and 1994. The other years, prior to and subsequent to the years at issue, were

not much better financially.  For these years, petitioner

reported the following losses:

| | |
|---|---|
| 1990 | $18,521 |
| 1991 | 20,957 |
| 1992 | 24,926 |
| 1995 | 12,217 |
| 1996 | 15,549 |
| 1997 | 34,425 |

At trial, petitioner testified she believed she would realize a

net profit of $7,500 for 1998; however, she had no books and

records to support that testimony, and she had not yet filed her

income tax return for 1998.  Petitioner acknowledged she did not

maintain accounting records to reflect income, expenses, and

profits or losses, although she maintained a file folder in which

she kept her receipts.  It appears that petitioner calculated her

profits or losses for income tax purposes only at or about the

time such returns were due.

After graduating from high school in 1983, petitioner

attended Southwest Texas State University at San Marcos, Texas,

and earned a bachelor's degree in business with an emphasis in

marketing.  After receiving her degree, petitioner obtained full-

time employment at or near San Antonio, Texas, and drove to her

employment each day from her parents' home, a distance of 8 to 10

miles.  Although the nature of petitioner's employment and her

employer's business were not established at trial, neither the

business nor petitioner's job related to horse breeding. Petitioner left that employment in October 1997 and did not thereafter accept any other employment. She continued living with her parents, devoting her entire time to the horse breeding activity. Petitioner has never paid rent or subsidized her parents for her living accommodations even during the period she was gainfully employed. In addition to providing petitioner with her room and board, petitioner's father also provided her with some financial assistance.

Petitioner's horses have always been on a tract of land of approximately 10 acres located about 25 miles from petitioner's parents' residence. The property consisted of a pasture with some trees and a barn or shed. Petitioner and her father leased the property. Another individual, Cecil Valdez, used the same property for his horses. Mr. Valdez did not pay any rent for his use of the property.

As noted earlier, petitioner commenced her activity with one horse, then another, and owned six horses during 1993 and 1994. Based on the testimony at trial, it appears that quarter horses can be bred and trained in certain categories, which petitioner and her father described generally as (1) western, (2) pleasure, (3) halter and trail, and (4) cutting. Petitioner directed her activity toward the first three named specialties, although she later realized that her chances for profit would be greater with

cutting horses. She, therefore, changed her operation to that specialty. It is that change that petitioner claims resulted in her realization of a net profit for 1998. Petitioner regularly attended horse shows, was a member of various associations related thereto, had business cards, and advertised in trade journals or newspapers. Petitioner's sales of horses, however, were minimal. The purchaser of three horses was Cecil Valdez, who owned other horses at the same location with petitioner. Another purchaser was an unrelated party.

Petitioner was of the belief that a market for her horses would be in Mexico; however, that did not materialize because of the decline in value of the Mexican peso. Petitioner also attributed her losses to the fact that she did not have a sufficient number of brood mares and that the bloodlines of her horses were not of the quality that would be in demand. She claimed that her chances of success would be enhanced by specializing with cutting horses rather than the other specialties stated above. She acknowledged her goal was to produce a $100,000 horse; however, to do that, she would be required to pay breeding or stud fees of at least $10,000, which she was not capable of doing. During the years at issue, petitioner paid $750 for stud fees. With respect to participation in horse shows, participants were either professionals or amateurs. Petitioner always participated as an

amateur, although she acknowledged that participation as a professional would enhance her financial success in the business. Petitioner never attempted to qualify as a professional.

Petitioner's sole motivation for engaging in her activity was her love for horses, dating back to her childhood. Petitioner had no educational training or experience in the business of breeding and training horses. She made no studies or consultations with professionals with respect to the business aspect of such an activity. She did not maintain a separate bank account for her activity, and she did not maintain formal books and records, nor does the record establish that petitioner made any effort to change the direction of her operation, although she recognized her need to do so.

Section 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed. Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The standard for determining whether the expenses of an activity are deductible under either section 162 or section 212(1) or (2) is whether the taxpayer engaged in the activity with the "'actual and honest objective of making a profit'". Ronnen v. Commissioner, 90 T.C. 74, 91 (1988) (quoting Beck v.

Commissioner, 85 T.C. 557, 569 (1985)).  While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide.  See Hulter v. Commissioner, 91 T.C. 371 (1988).  Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances.  See id. at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).  The burden of proving such objective is on petitioner.  Rule 142(a); see Welch v. Helvering, 290 U.S. 111 (1933).  In resolving this factual question, greater weight is given to objective facts than to the taxpayer's after-the-fact statements of intent.  See Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Siegel v. Commissioner, 78 T.C. 659, 699 (1982); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors relevant to the determination of whether an activity is engaged in for profit.  These factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the

history of income or losses with respect to the activity; (7) the amount of occasional profits earned, if any; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved. These factors are not merely a counting device where the number of factors for or against the taxpayer is determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. Cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Not all factors are applicable in every case, and no one factor is controlling. See Abramson v. Commissioner, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs. Further, the determination of a taxpayer's profit motive is made on a yearly basis. See Commissioner v. Sunnen, 333 U.S. 591, 598 (1948).

On this record, the Court is satisfied that petitioner's activity was not carried on with an actual and honest objective of making a profit. It is fair to conclude, among other things, that the activity was not conducted in a businesslike manner. Although the Court is satisfied that petitioner was dedicated to the activity, her motivation was primarily her love for horses. Despite years of substantial losses, petitioner had no formal or informal business plan and never sought the advice of experts on how to conduct the activity on a profitable basis. See Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965) ("the goal must be to

realize a profit on the entire operation which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years"), affd. 379 F.2d 252 (2d Cir. 1967). Respondent, therefore, is sustained on this issue.

Having concluded that petitioner's horse breeding activity was not engaged in for profit, the Court finds it unnecessary to consider respondent's alternative determination that some of the expenses claimed in connection with the activity were not substantiated.

With respect to the third issue, petitioner and her father began an emu breeding business in 1993.[2]  Although the record is not clear, it appears that this activity was also conducted on the same property with petitioner's horse breeding activity.

The only issue with respect to the emu activity is petitioner's claim to a depreciation deduction of $1,036 on her 1993 Federal income tax return with respect to four emus that were purchased in September 1993.[3]  The four emus (two matched

---

[2]  An emu is defined as any of various flightless birds, including a swift-running Australian bird with underdeveloped wings that is related to and smaller than the ostrich.  See Webster's Ninth New Collegiate Dictionary 408 (1985).

[3]  Petitioner reported the emu activity on a separate Schedule C of her 1993 and 1994 income tax returns.  Respondent did not challenge the activity as an activity not engaged in for profit under sec. 183.

pairs of male and female) were purchased by petitioner's father for either $28,000 or $28,500. Petitioner contends that she purchased a one-fourth interest in the four emus from her father and claimed a depreciation deduction of $1,036 on her 1993 income tax return with respect to that interest. Respondent disallowed the deduction on the ground that there was no evidence that petitioner had purchased any interest in the emus from her father. Respondent, therefore, determined that petitioner did not have a basis in the asset; therefore, petitioner could not claim a depreciation deduction.

There was no bill of sale offered into evidence to reflect the purchase of a one-fourth interest in the emus by petitioner. Petitioner's father agreed that no monetary consideration was paid to him by petitioner; however, he stated that petitioner was obligated to pay for her interest in the birds by taking care of them. No promissory note or other evidence of indebtedness was executed by petitioner. There was some reference at trial to a letter prepared by petitioner's father that stated that petitioner would pay the interest on an indebtedness, but the document admittedly failed to state that petitioner was liable for the principal. The document was not offered into evidence, nor was any documentary evidence presented to reflect what time or care petitioner expended on the emus.

Under section 167(c), the basis for the deduction for

exhaustion, wear and tear, and obsolescence in respect of property is the adjusted basis for determining gain or loss on the sale of such property as provided in section 1011.  Section 1011(a) provides generally that the adjusted basis for determining gain or loss shall be, as pertinent here, the basis determined under section 1012.  Section 1012 provides generally that the basis of property is its cost.

On this record, petitioner did not establish that she acquired an interest in the emus.  Moreover, the record does not establish that petitioner acquired an interest in the emus by gift.  The Court, therefore, sustains respondent on this issue.

The final issue is whether petitioner is liable for penalties under section 6662(a) for the years 1993 and 1994.  Section 6662(a) provides that, if that section is applicable to any portion of an underpayment in taxes, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies.  Under section 6664(c), no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause and that the taxpayer acted in good faith with respect to such portion of the underpayment.

Section 6662(b)(1) provides that section 6662 shall apply to any underpayment attributable to negligence or disregard of rules or regulations.  Negligence is defined as lack of due care or

failure to do what a reasonable and ordinarily prudent person would do under like circumstances. Neely v. Commissioner, 85 T.C. 934 (1985). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.

The Court is satisfied that petitioner not only engaged in the horse breeding activity solely because of her personal love of horses but also engaged in this activity with the knowledge that it was unrealistic to expect that any profit could be realized in the manner in which she conducted the activity. Such a conclusion is manifested by the fact that petitioner maintained no books and records, commingled the meager income with her personal funds, and never sought the advice of professionals who could have advised her on what she should do to make the activity profitable. Petitioner, moreover, had a degree in business and obviously had some knowledge, albeit basic, that her activity, as described, necessitated the maintenance of books and records. The substantial losses petitioner claimed over the years from this activity and the manner in which she conducted this activity manifest a negligent or intentional disregard of rules or regulations. Respondent's determination on this issue also was based on the deficiency attributable to the disallowed

depreciation on the emus.  The record shows that petitioner had no semblance of title to the emus, either by purchase or by gift, and the claim for depreciation on such asset likewise was a negligent or intentional disregard of rules or regulations. Respondent, therefore, is sustained on this issue.

<u>Decision will be entered</u>

<u>for respondent.</u>